# Smith *v.* City of Philadelphia, Appellant.

*Municipal law—Municipal contracts—Supplemental contracts—Contracts—Bids—Advertisements—Ratification.*

1. A contract between the city of Philadelphia and a contractor whereby the latter undertakes "to furnish and deliver all the materials, and to do and perform all the work and labor" required for a certain improvement "in its entirety" at unit prices but with an express provision that the work to be done "shall in no event exceed the sum of $500,000," which contract, by mutual agreement, is construed to mean, not that the whole improvement must be done for the sum named, but that the contractor is only to perform such work and to furnish such materials as would at the unit prices named in the contract not exceed $500,000, neither stipulates for nor contemplates the performance of any other work or compensation than the work and compensation therein expressly provided for, and to permit the city officials to enlarge it, under the guise of supplemental contracts,

so as to include the performance of the additional work necessary to complete the improvement and the further expenditure of $550,000 without advertising and letting to the lowest bidder would be in direct antagonism to the statutes and ordinances regulating the subject.

2. Where neither a city nor its officers are legally authorized to enter into a contract, any attempted ratification of their action in making such a contract is of no validity.

Argued Jan. 19, 1910. Appeal, No. 273, Jan. T., 1909, by defendants, from decree of C. P. No. 4, Phila. Co., Dec. T., 1908, No. 1,058, awarding permanent injunction in case of Samuel Smith v. The City of Philadelphia, John E. Reyburn, Mayor, George R. Stearns, Director of the Department of Public Works, John M. Walton, Controller, and Edwin H. Vare. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity by a taxpayer to restrain the city of Philadelphia and a contractor from entering into a contract supplemental to a prior contract for a municipal improvement. Before WILLSON, P. J.

The facts appear in the opinion of the Supreme Court.

*Error assigned* was decree awarding the injunction.

*Ira J. Williams* and *John G. Johnson,* with them *Simpson & Brown,* for Edwin H. Vare, and *J. Howard Gendell,* city solicitor, with him *Andrew W. Crawford,* assistant city solicitor, for the city of Philadelphia, et al., appellants.—The ratifying ordinances eliminate any question of antecedent authority on the part of the officials of the city to advertise for and receive bids upon the entire project: City v. Hays, 93 Pa. 72; Shiloh Street, 165 Pa. 386; Fell v. Phila., 81 Pa. 58; Brighton Road, 213 Pa. 521; Fitzgerald v. Phila., 3 Walker, 17; McKnight v. Pittsburg, 91 Pa. 273; Harrisburg v. Shepler, 190 Pa. 374; Amberson Ave., 179 Pa. 634; Chester v. Eyre, 181 Pa. 642.

The city can lawfully ask and receive bids for work to be done in opening or widening a highway before such highway

is actually opened or widened or condemned, and can lawfully contract for the doing of such work before condemnation proceedings are had.

The clause limiting the amount to be expended under "this" contract to $500,000 did not set the final limitation of expenditure; the actual intent of the parties, to be gathered from the four corners of the contract and specifications, being that all the work was to be done by that contractor as appropriations were from time to time made.

The original advertisement and bidding having covered the entire project, the city could thereafter base thereon one or more contracts, even if the original contract be regarded as limited to $500,000: City v. Hood, 211 Pa. 189; Clark v. Pittsburg, 217 Pa. 46; McManus v. City, 211 Pa. 394; Silsby v. Allentown, 153 Pa. 319; Parker v. Phila., 220 Pa. 208; Louchheim v. Phila., 218 Pa. 100.

Councils have power to authorize the proposed contract, irrespective of any prior advertising or bidding: Tatham's App., 80 Pa. 465; Ogden v. City of Phila., 17 Phila. 200; Ross v. Phila., 115 Pa. 222; Filbert v. Phila., 181 Pa. 530.

*E. O. Michener*, with him *Owen J. Roberts*, for appellee.— All contracts for city work must be let upon a competitive basis after advertising and bidding: Lehigh County v. Kleckner, 5 W. & S. 181; Addis v. Pittsburg, 85 Pa. 379.

If the contract was void for noncompliance with the statutory provisions, or if the statutes forbid the making of a supplemental contract, then no ordinance ratifying the making of such supplemental contracts can cure the defect and render them valid: Parker v. Phila., 92 Pa. 401; Mathews v. Phila., 93 Pa. 147; Bladen v. Phila., 60 Pa. 464; Phila. v. Flanigen, 47 Pa. 21.

Neither the city nor the contractor is bound to enter into such supplemental contracts, and hence they constitute new contracts, which must be let in the usual way.

The system of supplemental contracts, as here attempted, is unfair, is contrary to public policy, and should not be sustained.

OPINION BY MR. JUSTICE MESTREZAT, March 14, 1910:

In the elaborate opinion filed by the learned president of the court below he has found the facts and amply vindicated the correctness of the decree which was entered. Two other opinions were filed by the same learned judge in a case arising between the same parties and involving the same question in which he reached a like conclusion. Every contention of the learned counsel of the appellants in this case has been met and answered by the court below and the decree may well be affirmed on its opinion.

By a contract dated September 29, 1904, between the city of Philadelphia and one Edwin H. Vare the latter undertook, in consideration of the payments specified in the contract, "to furnish and deliver all the materials, and to do and perform all the work and labor required to be furnished and delivered, done and performed in grading, regrading, paving, repaving . . . . and other contingent work required for the improvement of Broad street from Moyamensing avenue southward in its entirety as projected for the Bureau of Highways and the Department of Public Works, in strict and exact accordance with the proposals and specifications" attached to the contract. The contractor was to be paid by warrants drawn on the city treasury "for the said work the sums or prices as set forth in the proposal attached hereto and made a part hereof." The contract also contained the following provision: "It is further distinctly understood and agreed that the total amount to be expended for the materials to be furnished and the work to be done under this contract shall in no event exceed the sum of five hundred thousand dollars ($500,000)."

The contract is explicit in its terms and sets out clearly the covenants to be performed by both parties. Vare undertook to furnish the materials and to perform the work required for the improvement of Broad street from Moyamensing avenue southward in its entirety as projected. The contract in terms, it will be observed, requires the contractor to do all the work and furnish all the materials for the consideration stipulated. The obligation is not to do any particular or specified part of

the work, but to complete the improvement "in its entirety." There is a limitation, not upon the amount of materials to be furnished and work to be done on the improvement, but upon the amount to be expended for such materials and work. The contract is based upon unit prices with, however, the limitation suggested. In no event could the city under this contract expend or the contractor receive more than the aggregate amount of $500,000 for the improvement. This is the usual contract where the contractor undertakes to perform certain work at unit prices with the stipulation that the entire cost of the completed work shall not exceed a fixed sum. As said by the learned trial judge, it is not apparent why the language of the contract made by Vare with the city does not cover the entire work for the improvement of Broad street from Moyamensing avenue southward, for the consideration stipulated in the agreement which was not to exceed $500,000. It does so in terms, and although more than five years have elapsed since the parties executed the contract, the contractor has not asked a chancellor to reform the agreement or to construe it differently from the plain import of its language. The city, however, has not thus construed the contract but agrees with the contractor that he is not required to complete the improvement for the sum named in the agreement. Under this interpretation of the contract of 1904 the city, by means of supplemental agreements, has attempted to obligate itself to pay Vare $550,000 for work on the improvement in addition to the half million dollars already paid him and for which he covenanted to furnish the material and do the work "required for the improvement of Broad street from Moyamensing avenue southward in its entirety."

Vare entered upon the performance of his work under the contract of 1904 and continued the prosecution of it until he had received according to the itemized terms of his bid the sum of $500,000. The improvement not having been completed, the councils authorized the proper city officers to enter into supplemental contracts with Vare to do additional work at the unit prices named in the original contract of 1904. Pursuant to an ordinance of May 10, 1907, the mayor,

without advertising for bids as required by the statute and ordinance, executed a supplemental agreement with Vare by which the latter was authorized to perform additional work on the improvement to an amount not to exceed $150,000. By an ordinance approved December 10, 1908, the proper city officers were authorized to execute a similar contract with Vare for further work on the improvement, without advertising for bids, to an amount not to exceed $400,000. The bill in this case was filed to restrain the execution of this contract.

The contract of September 29, 1904, was complete in itself. By that agreement, Vare undertook to do all the work on the improvement at specific unit prices, the aggregate not to exceed a certain sum for the entire work. Neither he nor the city was obligated beyond what was stipulated in the contract. The work he was to do and the amount of money the city was to pay were fixed by the agreement. While he agreed to do all the work and furnish all the materials for the improvement, yet the city construed the contract to mean that he was only to perform such work and to furnish such materials as would at the unit prices named in the contract not exceed the sum of $500,000. Under that construction of the agreement, he could not be required to perform any work other than that for which the sum named would compensate him.. On the other hand, the city did not agree that he should furnish materials or perform work beyond the limit named in the contract. In other words, after Vare had received $500,000 for the work which he had done under the contract of 1904, he could not compel the city to enter into another agreement at the prices named in the original contract for the work yet to be done on the improvement; nor could the city require him to furnish the materials and perform the work necessary to complete the improvement at the unit prices named in the contract. Under this interpretation of the agreement, its terms had been fulfilled and complied with by both parties when Vare on February 6, 1908, received the last instalment of the $500,000.

As said by the learned trial judge, whatever Vare agreed to

do was to be covered by the payment of the sum named. If, therefore, any other materials were to be furnished or work was to be done, the statutes and ordinances required that it should be done by contract which must be preceded by advertising for bids and by an appropriation of money to cover the cost of the work and materials. The same formalities were required to give validity to the contract to complete the improvement as preceded the contract of 1904, by which Vare agreed to perform the work. The learned court below so held and we think it was entirely right. The attempted ratification of the supplemental contract was of no validity. Neither the city nor its officers were legally authorized to enter into such a contract and hence their action in doing so could not be ratified. Ratification is only effective where there is authority to do the act which is subsequently ratified. The supplemental contract was in direct violation of the requirements of the law, and hence neither the city nor its officials could legally execute it.

Whether the width of the street as projected was to be 160 feet or 300 feet does not affect the original contract, or the question of the authority of the city, without advertising for bids, to enter into a supplemental contract with Vare for the performance of other work than that stipulated in the original agreement. The parties could not amend or enlarge the contract so as to make it include work beyond its original scope and hence the width of the improvement becomes immaterial. We may say, however, that we entirely concur with the conclusion of the learned trial court that the width of the street as contemplated in the original contract was 160 feet. That it was so understood by the officers of the city was expressly declared by them. In his message to councils on April 3, 1905, the mayor stated that "this boulevard is being built of a width of 160 feet." The director of public works indorsed upon one of the plans showing the contemplated width of 300 feet a statement that "only 160 feet is to be done under the present contract, approved September 29, 1904." It is true the councils had directed the board of surveyors to prepare the plan for a street 300 feet wide, but on

September 29, 1904, the date of the contract with Vare, the
board had neither confirmed nor rejected the plan which it
was within its power to do.  It seems that prior to the con-
tract with Vare, some of the officials of the city had antici-
pated the street being opened to the width of 300 feet, but
at the date of the contract, as suggested by the learned court
below, "the project was all in the air."  If it had been in-
tended to let a contract for the improvement of the street to
the width of 300 feet it should have been so stated in the ad-
vertisements so that parties could bid intelligently.  Vare
may have known of the purpose of the city officials to in-
crease the width of the street ultimately to 300 feet but, so
far as the evidence discloses, it does not appear that other
parties interested in bidding did know.  It was the duty of
the city officials to see that all the facts necessary to intelli-
gent bidding were given the public, and it was their impera-
tive duty, for the protection of the city, to see that the con-
tract with the successful bidder was expressed in clear and
explicit language.  In view of this and other litigation grow-
ing out of the original agreement, it seems that the parties
failed to make themselves understood by the language em-
ployed therein, and to leave the door of the city treasury
sufficiently ajar to justify the contractor in entering and de-
manding more than double the compensation stipulated in
the original contract for future work to be done on the im-
provement.

In awarding contracts, the officers of the city must comply
strictly with the requirements of the statutes and ordi-
nances.  We have said this time and again for reasons which
are apparent and which have been fully and frequently stated.
Section 6 of the Act of May 23, 1874, P. L. 230, provides that
all work and materials required by the city shall be furnished
under contract with the lowest responsible bidder.  The or-
dinance of December 26, 1882, enacted to carry the statute
into effect, authorizes and directs the departments to adver-
tise for all work and materials required and provides that the
contract shall be awarded to the lowest responsible bidder.
The Bullitt bill requires all contracts relating to city affairs

to be in writing and executed by the proper officer.   It further provides that every contract for public improvements shall be based upon an estimate of the whole cost, that no bid in excess of such estimate shall be accepted, and "the liability of the city thereon shall be limited by the amounts which shall have been or may be, from time to time appropriated for the same." These statutory provisions, as held in Hinkle v. Phila., 214 Pa. 126, are mandatory and must be strictly complied with. They cannot be evaded or disregarded by the city or by its officials. The protection of the public as well as the rights of the contractor require their rigid enforcement. It is manifest that the contract of 1904, neither stipulated for nor contemplated the performance of any other work or compensation than the work and compensation therein expressly provided, and to permit the city officials to amend or enlarge it, under the guise of supplemental contracts, so as to include the performance of the additional work necessary to complete the improvement and the further expenditure of $550,000 without advertising and letting to the lowest bidder would be in direct antagonism to the statutes and ordinances regulating the subject and afford an opportunity for favoritism and abuses of the grossest kind. The necessity for a strict observance of the statutory duty imposed upon city officials in awarding contracts is well stated by the learned president of the court below. He says: "The infirmities of human nature, the natural disposition to favor friends, personal and political, and the various motives which influence public officers to depart from a strict and rigid adherence to the obligations that rest upon them as representing the public, make it important that they should be held strictly within the limits of the powers conferred upon them."

The decree of the court below is affirmed.