# Flinn, Appellant, *v.* Philadelphia et al.

*Municipalities—Cities of the first class—Municipal contracts— Bids—Lowest responsible bidder—Advertisement — Ordinances — Acts of May 23, 1874, P. L. 230, and June 1, 1885, P. L. 37.*

1. The statutes and ordinances of the City of Philadelphia made in pursuance thereof provide when and the manner in which city contracts shall be made. A contract cannot be entered into without a strict adherence to those statutes and ordinances.

2. The duty to advertise for bids is not discretionary with the director of the department of public works, but is imposed upon him by the Act of May 23, 1874, P. L. 230, Section 6, providing that when work, materials and supplies are required by the City, proposals shall be asked for by advertisement, and when received shall be opened and the contract awarded to the lowest responsible bidder, and this legislative mandate the director is not at liberty to disregard.

3. Ordinances of the City of Philadelphia approved November 26, 1894, and December 28, 1895, provided that all stone used in municipal work should be cut and prepared in Philadelphia. The City of Philadelphia was about to erect a library building. Plans and specifications were prepared by the architect, and advertisement for bids was made, which provided that bidders must fully acquaint themselves with the various legal and departmental regulations with

regard to performing the work in the City of Philadelphia. In the specifications it was provided that any contract awarded should be subject, inter alia, to the said ordinances of 1894 and 1895. Thereafter the director sent to bidders who had procured copies of the specifications from the architect's office, a request to submit alternative bids for cutting the stone both in and outside of the City of Philadelphia. No change was made in the advertisement. The director proposed to award the contract to a bidder for the construction of the building with stone cut outside of the City of Philadelphia. A taxpayer filed a bill in equity to enjoin the city from effecting a contract on the basis of such a bid. The lower court refused a preliminary injunction.

*Held*, that, as the director had disregarded the provision of a valid ordinance in awarding the bid, and had failed to advertise or give public notice of the change in the specifications, bidders might be eliminated who would otherwise desire to bid, and that the relief prayed for should be granted, and the decree was reversed.

Argued May 2, 1917. Appeal, No. 137, Jan. T., 1917, by plaintiff, from decree of C. P. No. 1, Philadelphia Co., March T., 1917, No. 2509, refusing preliminary injunction in case of John F. Flinn v. City of Philadelphia, Thomas B. Smith, Mayor of the City of Philadelphia; George E. Datesman, Director Department of Public Works of the City of Philadelphia; Board of Trustees of the Free Library of Philadelphia, composed of Thomas B. Smith, Mayor of the City of Philadelphia; James E. Lennon, President of the Select Council of the City of Philadelphia; Dr. Edward B. Gleason, President of the Common Councils of the City of Philadelphia; Dr. George F. Baker, Dr. J. Leslie Davis, Dr. Cyrus Adler, R. H. B. Bowie, Isaac H. Clothier, Jacob S. Disston, Thos. J. Dolan, Henry R. Edmunds, Simon Gratz, Clarence S. Kates, William J. Latta, Thomas L. Montgomery, John F. L. Morris, Isaac Norris, David Pepper, Jr., William Pepper, Samuel Wagner, Joseph E. Widener, Benjamin Wolf and Clinton Rogers Woodruff. Before BROWN, C. J., MESTREZAT, MOSCHZISKER, FRAZER and WALLING, JJ. Reversed.

1917.]    Assignment of Error—Opinion of the Court.

Bill in equity for an injunction.  Before PATTERSON, J.
The opinion of the Supreme Court states the facts.

The court refused a preliminary injunction.  Plaintiff appealed.

*Error assigned* was the decree of the court.

*Walter Biddle Saul,* for appellant.—In awarding contracts, the officers of the city must comply strictly with the requirements of the statutes and ordinances: Smith v. Philadelphia, 227 Pa. 423; Mazet v. Pittsburgh, 137 Pa. 548.

*John P. Connelly,* City Solicitor, with him *James G. Magee* and *Ernest Lowengrund,* Assistant City Solicitors, for appellees.—The ordinances of 1894 and 1895 are invalid and ineffective since they would prevent the letting of contracts to the lowest responsible bidder: Frame v. Felix, 167 Pa. 47; Elliott v. Pittsburgh, 6 Pa. D. R. 455; McDonough v. Washington Borough, 20 Pa. C. C. 345; Minsinger v. Rau, 236 Pa. 327; Commonwealth v. Casey, 231 Pa. 170.

OPINION BY MR. JUSTICE MESTREZAT, May 22, 1917:

This is an appeal by the plaintiff from a decree refusing a preliminary injunction restraining the City of Philadelphia and its officers from executing a proposed contract for the construction of a building for the Free Library of Philadelphia to be located on the Parkway in that city.

The city, through the director of the department of public works, acting in conjunction with the board of trustees of the Free Library of Philadelphia, advertised in various newspapers of Philadelphia for proposals for the erection of a library building, in accordance with the plans and specifications prepared by the architect and on file in his office.  The advertisement stated that "bidders

must fully acquaint themselves with the various legal and departmental regulations in regard to performing the work in the City of Philadelphia. Synopses of these laws, ordinances, etc., are set forth in the specifications." In the specifications, under the heading "notice to bidders and proposal requirements," it is provided that any contract awarded under the specifications shall be subject, inter alia, to the provisions of the ordinances, approved November 26, 1894, and December 28, 1895, relating to the preparation and use of stone that may enter into the work done under contract with the city. These ordinances provide that all stone used in municipal work shall be cut and prepared in Philadelphia.

The advertisement inviting proposals covered the period from March 6th to March 24th, and required the bids to be submitted by noon on March 27th, at which time they were to be opened. The director of the department of public works, on March 15, 1916, sent to the bidders who had procured copies of the specifications from the architect's office the following notice: "In preparing your estimate for the building for the Free Library of Philadelphia, please note that a question as to the interpretation of the specification relating to the place where the stone entering into this building must be cut has arisen. It has been determined to solicit proposals for cutting the stone both in and outside of the City of Philadelphia; a new proposal form is therefore enclosed which is to be substituted for the proposal form issued, this new proposal form is identified from the old by the notation in red at the top of the proposal form." The form of the alternative proposal accompanying the notice was, inter alia, as follows: "Item No. 1. Erecting the building to the full extent comprised in the plans and specifications, the limestone and granite to be cut in the City of Philadelphia......" "Item No. 1 A. Erecting the building to the full extent comprised in the plans and specifications, the limestone and granite to be cut outside the City of

Philadelphia.......'' There was a memorandum on the alternative form notifying bidders that bids must be made on both items to make the proposal regular.

There was no change in the advertisement as originally inserted in the newspapers, nor was any notice given by advertisement for proposals for the construction of the building by stone cut and prepared outside the city. There was no change made in the plans and specifications filed in the office of the city architect.

At noon on March 27, 1917, the bids were opened. There were four bids received, each in the alternative. G. A. Fuller Company was the lowest bidder for the stone cut and prepared both in the city and outside the city. It was proposed to award a contract to the Fuller company for the construction of the building with stone prepared outside the city, on the basis of the alternative bid, that being the lower of the two bids. The plaintiff, a taxpayer, thereupon filed this bill on April 3, 1917, to enjoin the defendants from executing a contract on the basis of the bids submitted on March 27th.

We think the learned court below committed manifest error in refusing to grant the injunction. The contract for this work could not be awarded until notice for bids had been given by advertisement, as provided by the city ordinances. The advertisement which the director of public works published, as will be observed, was for proposals for the construction of the building according to the plans and specifications prepared by the architect and on file in his office, and bidders were directed to acquaint themselves with the laws and ordinances set forth in the specifications. These ordinances provide that it shall be "obligatory on Departments to have all stone used in municipal work cut and prepared in Philadelphia, and proposals for work into which said stone enters shall be so worded as to inform intending bidders of the provisions of this ordinance." This advertisement was the only notice given to the public requesting bids

for the construction of the library building, and it excluded all persons from bidding except those who would cut and prepare the stone within the City of Philadelphia. The prescribed area for performing the work necessarily limited the number of bidders, and there can be little doubt there were persons who declined to bid by reason of the conditions imposed by the original specifications, as under the ordinances and the advertisement, the contract could only be let on the basis of bids made subject to the condition that the work should be done in the city. While the advertisement in question was appearing in the press of the city and requests for proposals to do the work, as required by the specifications, were thus being made, the director sent to a few prospective bidders who had procured the original specifications a notice soliciting proposals "for cutting the stone both in and outside of the City of Philadelphia" with a blank form for alternative bidding. The effect of this action of the director was to change the specifications and to set at naught the plain mandates of the ordinances in question. This assumption of judicial authority by an executive officer is attempted to be defended on the ground that the ordinances are repugnant to the Acts of May 23, 1874, P. L. 230, and June 1, 1885, P. L. 37, and, therefore, the director was justified in ignoring them. The validity of the ordinances has been argued, and we are asked to determine the question, although the trial court declined to do so. It is, however, wholly unnecessary, as the action of the director cannot be sustained whether the ordinances are valid or invalid and ineffective. The ordinances of the City of Philadelphia, passed to carry into effect the provisions of the Act of May 23, 1874, P. L. 230, Sec. 6, provide that when work, materials and supplies are required by the city, proposals shall be asked for by advertisement, and when received shall be opened and the contract awarded to the lowest responsible bidder. It is not pretended that the director adver-

tised for bids for cutting the stone outside the city. This disregard of a valid ordinance is inexcusable and, of course, illegal, and would invalidate his subsequent action in letting a contract: Hinkle v. Philadelphia, 214 Pa. 126; Smith v. Philadelphia, 227 Pa. 423. In the Hinkle case we said (p. 131): "The statutes and city ordinances made in pursuance thereof provide when, and the manner in which, city contracts shall be made, and we have frequently and uniformly held that a valid contract cannot be entered into without a strict adherence to those statutes and ordinances." The duty to advertise for bids was not discretionary with the director, but was imposed upon him by a legislative mandate which he was not at liberty to disregard. We may repeat as applicable here the language of this court in Louchheim v. Philadelphia, 218 Pa. 100, 103: "We do not doubt that the director in this instance acted in entire good faith, and did what he believed to be for the best interests of the city, but the question involved is not one of good faith on the part of the head of the department, but of power in that official in the exercise of his discretion to disregard the plain mandate of the law. There was only one safe rule to follow in this case, and that was to observe the requirements of the statutes and the ordinances regulating the awarding of the contract."

Aside, however, from the official duty of the director to advertise, the necessity for publicly inviting proposals for the work outside the city is apparent. Personal notice to a few individuals was not sufficient and did not meet the legislative requirement. The specifications were on file with the architect and were doubtless seen by many persons who were not notified of the change made by the director, but who, having such information, might have bid for the contract. In short, the failure to advertise or give public notice of the change in the specifications eliminated as competitors of the few individuals who received notice all persons who might have desired

the contract if the work was to be done outside the city. Such discrimination prevents general competitive bidding which is contrary both to the spirit and the letter of all legislation regulating the letting of municipal contracts.

It follows, for the reason stated, that the learned court below was in error in refusing the preliminary injunction restraining the defendants from executing a contract on the basis of the bids submitted on March 27, 1917.

The decree is reversed, a preliminary injunction is awarded, and the record is remanded for further proceedings not inconsistent with this opinion.