## Hallowell v. Radnor Township

*Allen S. Olmsted, 2d,* and *Earl G. Harrison,* for plaintiff.

*Lutz, Ervin, Reeser & Fronefield,* for defendants.

FRONEFIELD, P. J., April 1, 1936.—I find myself unable to agree with the conclusions of law reached by the chancellor and will, therefore, in a few words, state the reasons therefor.

The facts in this case are practically undisputed. As a matter of fact, the chief exceptions to the chancellor's findings of fact relate to additional facts which he refused to find concerning matters occurring at a meeting of the Commissioners of Haverford Township after the bids had been opened and tabulated. I agree with the chancellor that such evidence was immaterial, but for the reason that the legal status of the parties had already been fixed.

The case is very similar to that of Straw v. Williamsport et al, 286 Pa. 41. In that case, the City of Williams-

port advertised for bids for certain paving. The advertisement specified that the council reserved the right to reject any or all bids or any part of any bid. An examination of the paper book shows that on July 15, 1925, six bids were received, the two lowest being the Union Paving Company, which bid $58,728.50, and Busch & Stewart, which bid $59,049.40. All bids were tabulated and filed. On July 16, 1925, the council passed a resolution that all bids except the two lowest be returned to their respective bidders. Subsequently the city, without designating the low bidder, decided to eliminate all items pertaining to sewers. The bids were retabulated with these items eliminated and, as a result, the bid of the Union Paving Company became $54,754.50, while the Busch & Stewart bid became $54,017.50. On July 28, 1925, an ordinance was approved which provided that a "contract . . . be and the same is hereby awarded to Busch & Stewart of Williamsport, Pa., at the prices named in its bid or proposal, which said bid or proposal is hereby accepted." Plaintiff, as a taxpayer, thereupon filed a bill to restrain the city from entering into a contract with Busch & Stewart. (The opinion of the Supreme Court inadvertently states "Union Paving Company").

The Supreme Court held that when the advertisement reserves the right to reject any or all bids or parts of bids the city has the right, before selecting the successful bidder, after the proposals are opened, to strike out certain parts of the scheduled work as unnecessary. It went on to say that: "If the city, after tabulation, designated one of the parties as the lowest bidder to whom the contract must be awarded, by that act it accepted his proposition, and the subsequent rejection of any part of the proposed work would not be a rejection of any part of the bid, but of the work."

I agree with defendant that this last statement was obiter dictum, because the facts in that case reveal that there was no "selection of the successful bidder", nor had the city "designated one of the parties as the lowest bid-

der" before it eliminated the sewer items. However, I believe that the court intended to establish a rule whereby eliminations before such "designation" would be a rejection of part of the bids, as bids, and would require the award of the contract to the lowest responsible bidder on the items remaining, but eliminations after such "designation" could not affect his right to the contract and could only eliminate certain parts of the work which he was to do under it.

The question in this case becomes whether or not Radnor Township had made such a "designation" as was contemplated in the Straw case before it eliminated the filter item. I believe that it did so.

The evidence shows that, at a joint meeting of the Commissioners of the Township of Haverford and of the Township of Radnor, subsequently ratified at an official meeting of the Commissioners of the Township of Radnor, the following resolution was adopted:

"Resolved, that a recommendation be made to the State Engineer, P. W. A., that the award of Contract No. 2 be made to the Underpinning & Foundation Company, Inc."

It is true that this is only a recommendation, but, nevertheless, the commissioners could only properly recommend the contractor who was the lowest responsible bidder, and the fact that such a recommendation was made is a recognition of the fact that the company was the lowest responsible bidder. "Designation" is defined in the Oxford English Dictionary as:

"The action of marking or pointing out; indication of a particular person, place, or thing by gesture, words, or recognizable signs. . . . The qualification of being marked out or fitted for an employment."

Since an essential qualification for the employment of a contractor is that he is the lowest responsible bidder, I feel that the resolution sufficiently identified the company named as the lowest responsible bidder and that the township no longer had the right to award the contract to anyone else. If its commissioners felt that it would be

unwise to award such a contract, they could not be compelled to do so, but, in such case, their remedy would be to reject all the bids and readvertise. I would sustain plaintiff's sixth and seventh exceptions and would enter a decree granting the prayer of plaintiff's bill.

BROOMALL, J., concurring.—The chancellor, MacDade, J., in the above case, having submitted an opinion and final decree dismissing exceptions to his decree nisi, findings of fact and conclusions of law, whereby the bill of complaint is dismissed, and President Judge Fronefield having written and submitted a dissenting opinion recommending that plaintiff's sixth and seventh exceptions be sustained and a decree entered granting the prayer of the bill, it now becomes the duty of the undersigned as a member of this court, consisting of three members, either to concur in the opinion of the chancellor or join in the dissenting opinion.

After a careful reading of the notes of testimony, with due consideration of the briefs of counsel, I am of the opinion that the resolution of the Commissioners of Radnor Township recommending to the State Engineer, P. W. A., that the award of the contract in question be made to the Underpinning & Foundation Company, Inc., is the selection of that company by the township as the lowest bidder. It follows upon such a designation being made that the township lacks legal authority thereafter to eliminate the filter from the specifications on all bids with the result that another becomes the lowest bidder. This filter could have been eliminated before the designation, and an award then made to the one appearing to be the lowest bidder. If eliminated after the designation, then it may only be done on the designated bid of the successful bidder. The designation of the lowest bidder as the successful bidder is an acceptance of its proposals, and nothing may be done thereafter to affect its rights except under the terms submitted, in this case that any and all bids may be rejected, either in whole or in part.

Defendants contend that the provision in the advertisement for bids that "no contract will be awarded until bids have been examined and passed by the State Engineer, P. W. A.," has the legal effect of holding open for further consideration all bids received. There might be some force to this argument if all bids before the designation of the lowest bidder had been submitted to the engineer for such action and then returned to the township for designation of the lowest bidder. If the engineer then recommended, as the township has decided, that the filter item be eliminated, this would have the effect of holding open the designation of the lowest bidder. If such were the facts, then the township could strike out the filter item from all bids and designate the lowest bidder on the remaining items. This, even though the result would be the designation of a bidder as the lowest who in fact was not the lowest bidder on all the items, including the filter.

That the resolution recommending to the engineer "that the award of contract no. 2 be made to the Underpinning & Foundation Company, Inc.," was a legal designation of the lowest bidder by the township is so clearly set forth in the dissenting opinion that it is unnecessary to repeat or add to what is therein stated.

The writer therefore joins in the dissenting opinion.

The effect of this opinion, concurring in the above dissenting opinion, being that a majority of the court are of the opinion that the prayers of the bill be granted, counsel will therefore prepare and submit a final decree.

### Opinion and decree

McDade, J., dissenting.—As related in the chancellor's opinion, this suit is a bill in equity instituted by a resident taxpayer, Gertrude P. Hallowell, subsequently joined, by decree filed, by an intervenor, Frank O'Brien, as nominal plaintiffs. The Underpinning & Foundation Company, a bidder on sewer construction work to which no contract has been awarded or formal written agree-

ment entered into, is the real party in interest. The suit is against the Township of Radnor, a municipal corporation exclusively authorized to enter into such contracts, and certain officials thereof. It will be noted at this stage of the proceedings that the Township of Haverford is not a party hereto, although it is interested in certain features of the controversy. The prayer of the bill is to restrain defendant from awarding a contract for the furnishing and installation of mechanical equipment in a sewage disposal plant to the Roberts Filter Manufacturing Company on its bid of $122,400 in lieu of to Underpinning & Foundation Company on its bid of $127,986. Plaintiffs contend, in their bill and replication, that the contract should have been awarded to the latter company. This is contested by the answer.

It appears by the pleading that the Township of Radnor has advertised for bids embracing six separate items or separate contracts for the erection of a sewage disposal plant to be located in the Township of Haverford, pursuant to plans previously approved by the State Sanitary Water Board. Among the various contracts was the one for the furnishing of mechanical equipment, embracing 23 items for the furnishing and installation of machinery, being items nos. 10 to 32, inclusive.

The project is being financed in part by funds furnished by the Federal Emergency Administration of Public Works, as was set forth in the advertisement for bids.

In the advertisement it was stated that "No contract shall be awarded until bids have been examined and passed upon by the State Engineer, P. W. A."

The advertisement further stated, inter alia:

"All bids shall be made on the blank form of proposal, bound in the specifications and shall give the price of each item of the work proposed, both in writing and in figures."

The advertisement further provided:

"The right is reserved to reject any and all bids or parts thereof. The right is reserved to select the bid, the acceptance of which will, in the judgment of Radnor and

Haverford Townships, best secure the efficient performance of the work. Radnor and Haverford Townships reserve the right to eliminate such items of work as it may deem essential to maintain the contract price within the amount appropriated for the work, subject to the approval of the State Engineer, P. W. A."

Bids have been received for all of the various contracts, and the commissioners have, up to the present time, made no awards nor entered into formal contracts with any of the contractors. The townships' boards of commissioners have passed formal resolutions recommending to the State engineer the award of the various contracts to the various bidders, subject to his approval. Plaintiffs admit this, for in their brief they say:

*"While the final contract in this case was to be let by Radnor Township alone, there can be no doubt that Haverford Township was vitally interested."* (Italics ours.)

When the chancellor wrote the opinion he believed, and he still believes, that there is one question involved, and that is whether the township, after having advertised for bids for furnishing a number of items of mechanical equipment for a sewage disposal plant, and which requested unit bids on each item, and reserved the right to reject any or all bids or parts of bids, had the right, after the bids were received and opened, to eliminate one of the items, item no. 28, the final filter or clarifier, where, as a result of its doing so, the lowest bidder for furnishing all the items for which bids were asked ceased to be the lowest bidder after the exclusion of the item mentioned; whether there was warrant for awarding the contract to the lowest bidder with the item excluded.

To the chancellor's findings of fact, conclusions of law and decree nisi plaintiffs have filed 33 exceptions; these we are now considering as a whole, rather than seriatim, because the exceptions, briefly summarized, raise but three questions:

1. Whether the court should have received in evidence the minutes of the meeting of the Haverford Township

Board of Commissioners, held on May 13, 1935, and should have affirmed plaintiffs' requests for findings of fact and conclusions of law based upon inferences which plaintiffs desired the court to find from statements made at the meeting;

2. Whether the action of the Commissioners of Radnor Township in recommending to the State engineer the award of the contract to the Underpinning & Foundation Company was such a final action on the part of the board, and so closed the matter so far as the township was concerned, that the matter of awarding the contract and determining the items of machinery to be used could not thereafter be reconsidered;

3. Whether the law, and the terms and conditions of the advertisement and specifications respecting the award of a contract for public work, must be strictly complied with.

Before discussing these questions, which we deem controlling, we note that the chancellor relied principally upon the principles of decisional law as clearly enunciated in Straw v. Williamsport et al., 286 Pa. 41, in which case it was held, where the City of Williamsport, in advertising for bids for a public improvement consisting of a number of items which embraced certain sewers and certain street paving, reserved the right to reject any or all bids or parts of bids, that the city could properly and lawfully, after the bids had been received and opened, in the exercise of its sound discretion, eliminate all of the items for the sewers and award the contract to the bidder whose bid was the lowest for the various items of construction that the city determined should be made, notwithstanding that the bidder to whom the contract was awarded was not the low bidder for all of the items before the exclusion had been made. In disposing of the case and sustaining the propriety of the action of the city, the Supreme Court pointed out, on page 43:

"The advertisement reserved the right to reject any or all bids or parts of bids, and that is conclusive of the question. When the bidders placed their unit prices op-

posite the work to be done, they knew that, as a part of the proposal, the city might reject any part of any bid, provided, of course, the part rejected applied to all bidders. The standard for competition was then the same for all persons desiring to compete for the work."

As the chancellor has said, courts should not be zealous to interfere with the letting of contracts; executive officers are clothed with a wide discretion. We think plaintiffs are in accord with this sound proposition; it cannot be denied. On the other hand, they, as taxpayers, are to be commended for insisting upon their interest and right as such to see that the law is strictly complied with in the awarding of public contracts: See Harris v. Philadelphia et al., 299 Pa. 473.

On page 481 of the above case we find the following, in which we emphatically concur:

"Finally, it is contended by appellees, that even if we held the ordinance was for any reason defective, still we should affirm the decree below, because it did not appear that plaintiff, who sued simply as a taxpayer, was injured, there being no averment or proof that any of the three rejected bidders would have bid less than the intervening defendant. Aside from the contention that to so hold would permit the city officials to take advantage of their own wrong, it suffices that a taxpayer's right cannot be limited in the way suggested. He may object to the making of any contract, which would result in the wrongful taking of the city's money, whether his individual loss would be great or small: Page v. King et al., 285 Pa. 153. As is well said by Audenried, J., in Croasdill v. City of Phila., 18 Pa. Dist. R. 719, 720: 'each taxpayer has the right to demand that the requirements of law with respect to the method of letting municipal contracts shall be complied with in the case of every contract, apart from the question of the immediate or direct loss that a failure to comply therewith may involve in any specific case.' "

In Pearlman v. Pittsburgh et al., 304 Pa. 24, 29, the court said:

"The municipal authorities having determined who is the lowest responsible bidder, discretion ends and the contract, if awarded, must be given to him. Referring to the statutory language 'lowest responsible bidder,' Mr. Justice Simpson, speaking for the court, in Schuck v. School District of Baldwin Twp., supra, says (page 411) : 'This language is mandatory, not discretionary, and if there is more than one responsible bidder, the work can be authorized only under contract with the lowest: Summit Hill School Directors, 258 Pa. 575, 580; Harris v. Phila., 283 Pa. 496; Com. v. Jones, 283 Pa. 582. There is a discretion vested in the board to determine who are and who are not responsible bidders,—a sound discretion to be exercised in a given way, as we shall point out later,—but once it is determined which of the bidders are responsible, discretion ends; the contract must be awarded, if at all, to the one of them whose bid is lowest, though there is but a slight difference in amount between him and another bidder whom the board would like to favor. The money to be expended is public money,—a trust fund,— and, in matters of this kind, the law recognizes no right in the directors to expend any of it, however small, except for work done by the "lowest responsible bidder." ' "

In Harris v. Philadelphia et al., 283 Pa. 496, 503, Mr. Justice Frazer wrote for the court:

"The legislative and municipal intent, under our statutes and ordinances passed to carry them into effect, are that there should be open and honest competition in bidding so that fair prices should be procured and the city protected from collusive bidding as well as favored bidders: Louchheim v. Phila., 218 Pa. 100, 102. 'It is only by strictly following these provisions in awarding public contracts that the city may secure the benefit and advantage of fair and just competition between bidders and at the same time close, as far as possible, every avenue to favoritism and fraud in its varied forms. The private negotiations between a director and successful bidder

through which the terms and conditions of a bid are modified or changed, resulting either to the advantage or disadvantage to the city, are not within the purpose and spirit of the law': Louchheim v. Phila., supra, page 103. 'The infirmities of human nature, the natural disposition to favor friends, personal and political, and the various motives which influence public officers to depart from a strict and rigid adherence to the obligations that rest upon them as representing the public, make it important that they should be held strictly within the limits of the powers conferred upon them': Smith v. Phila., 227 Pa. 423, 431."

In Louchheim v. Philadelphia, 218 Pa. 100, 102, referred to in the opinion last quoted, we find this, in addition:

"This rule [as to open and honest competition] was announced in Mazet v. Pittsburg, 137 Pa. 548, in which Mr. Justice Sterrett, who delivered the opinion of the court, said: 'It cannot be doubted that the true intent of the act of 1874, and the ordinances passed in pursuance thereof, regulating the awarding of public contracts, is to secure to the city the benefit and advantage of fair and just competition between bidders, and at the same time close, as far as possible, every avenue to favoritism and fraud in its varied forms.' This is a wise and wholesome rule which should always prevail in the letting of such contracts. In the present case the contract, it is true, was awarded at a sum below the lowest bidder in the open competition, but it was so clearly the result of private negotiations between the director and the successful contracting firm, without regard to the conditions of the open competitive bidding and the requirements of the act of assembly and the municipal ordinances, that the award cannot be sustained without striking down all those safeguards which the legislature, the courts and the city have thrown around the letting of these contracts. If the director had the power to enter into private negotiations with a contracting firm for the purpose of reducing its original bid submitted at the time of the open competition,

it would necessarily follow that he would have the same power to allow the bidder to increase the amount of his bid submitted at the public letting. If such a rule is to be established it must be held to work both ways, and this would lead to favoritism and fraud in its varied forms which the courts have said must not be allowed."

In Smith v. City of Philadelphia, 227 Pa. 423, 431, the court said that all of the statutory provisions governing the award of public contracts "are mandatory and must be strictly complied with. They cannot be evaded or disregarded by the city or by its officials. The protection of the public as well as the rights of the contractor require their rigid enforcement."

It must be frankly admitted, therefore, in view of the above authorities, that, in the award of public contracts, the provisions of the law, insofar as they relate to full and free competition among bidders and the proper exercise of the discretion lodged with the municipal authorities, must be strictly complied with. But, in view of this, we fail to see wherein the chancellor has erred in relying upon the well-considered opinion in Straw v. Williamsport, supra, and that there is any inconsistency in his findings and conclusions with the ruling in the latter case and the other authorities quoted at length above. Indeed these plaintiffs, and this was referred to in the chancellor's opinion, never set up any fraud. So he necessarily found that the Commissioners of Radnor Township had acted entirely in good faith in the selection of the bidder, and that there was no fraud, imposition, overreaching or unfair dealing in striking out the item of the final filter and in recommending to the State engineer the award of the contract to the Roberts Filter Manufacturing Company. He also found, with justice and right, that the entire proceeding was without ulterior motive to prefer any bidder. Upon such finding he concluded, properly:

"There is no evidence to establish any irregularity, unfair dealing or ulterior motive to prefer any bidder as the successful bidder for the performance of the contract."

No complaint was made in the instant case that the township commissioners had not complied with the terms of their advertisement, or their plans and specifications. As we have seen, the right was expressly reserved to reject any or all bids or parts thereof, which included the right to exclude any item or number of items for which unit prices were asked. All of the contractors knew when they submitted their bids that the municipal authorities were privileged to select the items which they finally determined should be incorporated into the plant. After such determination, and the selection of various items desired, the bidder whose bid was low was entitled to an award of the contract if he qualified as a responsible bidder. That is exactly what was done in this case. The township authorities exercised their discretion carefully, considerately and honestly, without any desire, as the chancellor has found, to prefer one bidder over the other. Such action has met with the approval of the Supreme Court, as shown in the case of Straw v. Williamsport et al., 286 Pa. 41.

This is a complete answer to the third question relating to strict compliance with the terms of the specifications and of the advertisement in an award of the contract for public work.

Plaintiffs attack the ruling of the chancellor respecting the admissibility in evidence of the minutes of the Haverford, not Radnor, Township board of commissioners' meeting: See the first question, supra.

We think the chancellor very properly refused to give any consideration to the minutes of the meeting of the Board of Commissioners of the Township of Haverford, not Radnor, held on May 13, 1935, containing a discussion regarding the items of machinery that might be used or eliminated from the sewer disposal plant. The award of the contract for the disposal plant was to be made by Radnor Township and by Radnor Township alone, which was paying for the plant and which is the only party defendant in this proceeding. What was said at this public meeting of the Haverford Township commissioners, either

by the commissioners themselves or by others, principally by a Mr. Smith, a resident of Haverford Township and a representative of a manufacturer of machinery used in sewage disposal plants, could not affect or bind the Commissioners of Radnor Township, nor should individual views there expressed be held to affect future corporate action. None of the Commissioners of Radnor Township was present at the meeting. Just what influenced the Commissioners of Haverford Township to change their minds respecting their former insistence that the final filter or clarifier should be added to the sewage disposal plant, as shown by their subsequent action at the joint meeting by the Commissioners of Radnor Township and Haverford Township, held on May 23, 1935, is not material.

Even had the meeting of May 13, 1935, been one at which official binding action may have been taken, evidence of motives of individual members in taking part in corporate action would, under the decisions, have been inadmissible: Pottsville Borough v. Pottsville Gas Co., 39 Pa. Superior Ct. 1; The Borough of Freesport v. Marks, 59 Pa. 253; The Sunbury & Erie R. R. Co. v. Cooper, 33 Pa. 278; Emaus Borough v. Security Trust Co. (No. 2), 6 D. & C. 403, 408; Souder et al. v. Souderton Borough Council et al., 13 D. & C. 32.

In Emaus Borough v. Security Trust Co. (No. 2), 6 D. & C. 403, it was held that the motives of the members of the borough council, or the influences under which they acted, could not be considered to nullify an ordinance duly passed in regular form. In that case the ordinance provided for the widening of a street. The court, Reno, P. J., after a review of the decisions showing that, when passing on the legality of an ordinance, it is not permissible to inquire into the motives which inspired the legislation, said, at page 408:

"Moreover, it is by no means clear that the borough cannot do what it purposes without subjecting its action to the suspicion of an improper motive. In the first place,

the power to open streets is discretionary, and its exercise of that power will not be reviewed by the courts, nor will it be required to open the whole length of a plotted street. The law commits the performance of these duties to the exclusive discretion of the officers of the borough, who may lay out streets as and when they deem them necessary and open them to the extent determined to be proper. Hence, the omission to open at once and by one taking the whole length of a widened street cannot raise the inference that the widening ordinance was enacted merely to harass or oppress a particular land owner. It follows that, even if the borough does not now manifest an intention of opening the whole width and length of the street to public travel, we cannot on that ground refuse relief to it for an obstruction upon that part which it is not presently opening."

The minutes of the joint meeting of the Haverford and Radnor Townships boards of commissioners, held on May 23, 1935, at which time joint action was taken by the boards, rescinding the prior recommendation that had been made to the State engineer and eliminating from all the plans, specifications and contracts the installation of the final filter or clarifier, and the resolutions passed at that meeting, show clearly and unmistakably that the boards had definitely jointly determined that this unit should not be used in the plant. Accordingly, and as a result of such action, the recommendation to be made to the State engineer was that the contract be awarded to the Roberts Filter Manufacturing Company, whose bid was the lowest after this item had been eliminated. The action taken by these two boards of commissioners was subsequently ratified on the same day, to wit, May 23, 1935, by the individual Boards of Commissioners of Radnor Township and Haverford Township. It seems obvious, therefore, that anything that was said at a prior meeting of the Haverford Township board of commissioners, held on May 13, 1935, is so clearly incompetent and irrelevant as not to call for further discussion.

The last question pertains to the original recommendation of the State engineer regarding the award of the contract, as precluding subsequent action on the part of the municipal authorities.

The only recommendation actually delivered to the State engineer upon which he acted affirmatively was the recommendation of the Radnor Township board of commissioners that the contract be awarded to the Roberts Filter Manufacturing Company, which was the lowest responsible bidder with the final filter eliminated. The State engineer had the final determination to make for the specifications and advertisements, particularly the latter, wherein it was stated: "No contract shall be awarded until bids have been examined and passed upon by the State Engineer, P. W. A." Admittedly the original action of the Radnor Township board of commissioners, in recommending to the State engineer that the contract be awarded to the Underpinning & Foundation Company, was never delivered to the State engineer nor acted upon by him.

The chancellor has concluded as a matter of law that the mere recommendation to the State engineer, for his approval, that the contract be awarded to one of the bidders was not such final action as precluded the Radnor Township commissioners from reconsidering the question in the exercise of their discretion in deciding the kind and character of sewer disposal plant which should be constructed and the various items of machinery that should be incorporated in the plant. Nothing short of an actual award of the contract ought to prohibit the municipal authorities in the exercise of the undoubted discretion which the law has conferred upon them, or preclude any elimination of items or change of plans which did not require readvertisement or reconsideration of any previous action that may have been taken looking to the award of the contract. In the advertisement and in the specifications the right was expressly reserved to reject any or all bids or parts thereof,

which enabled the township, before an actual award of the contract, to determine the kind of a plant they desired to erect and to eliminate any item or items, and, after such elimination, to determine who was the lowest responsible bidder to whom the award of the contract should be made. Any other rule would limit the full exercise of their discretionary powers and would, in many cases, preclude a full and thorough investigation or reconsideration of any previous impression so much desired in the award of public contracts, particularly those of so considerable a magnitude as that involved in this case, and so would be detrimental to the public interests.

Plaintiffs have referred to no direct authority in support of their contention, except the obiter dictum in Straw v. Williamsport et al., 286 Pa. 41, which obiter dictum is not applicable to the facts of the case now in hand. Prior to an actual award of the contract, full consideration by the municipal authorities or a reconsideration of prior action should not be curbed in any way, in furtherance of the public interests. The chancellor has found that there was no evidence to establish any irregularity, unfair dealing or ulterior motive to prefer any bidder as the successful bidder for the performance of the contract. The State engineer testified at the hearing that complaint was made to the investigation department of the Public Works Administration; that the matter of the original action respecting the recommendation to award the contract to the Underpinning & Foundation Company, the subsequent action reconsidering the matter, eliminating the final filter and recommending an award of the contract to the Roberts Filter Manufacturing Company, were very thoroughly investigated and considered, not only by the investigation department, but by the legal department, the State engineer, and the State Sanitary Water Board. The matter under discussion has been very thoroughly considered by the commissioners of both townships, the engineers, the State Sanitary Water Board,

and the State engineer, P. W. A. Of this there can be no question.

That the final action eliminating the final filter has resulted in saving to the taxpayer many thousands of dollars is likewise beyond dispute. To urge that action of municipal authorities looking to a mere recommendation of an award of a contract should forever close the door to further consideration and investigation, or constitute such final action as to preclude the municipal authorities from making a change by eliminating an item, as they had expressly reserved the right to do, would be extending a technicality entirely too far, and, in many cases, as demonstrated in the case now before the court, would operate adversely to the public interests. Especially, too, is it absurd in view of the provision that "No contract shall be awarded until bids have been examined and passed upon by the State Engineer, P. W. A." The latter, with the entire situation before him for examination and perusal, has approved only the recommendation to award the contract to the Roberts Filter Manufacturing Company. This is conclusive and fair and just under the testimony and the law applicable thereto. We think the chancellor was correct in his determination. Hence he would make the following

### Decree

And, now, February 26, 1935, the matter of plaintiffs' exceptions to the chancellor's findings of fact, conclusions of law, and decree nisi coming on to be heard by the court en banc, together with oral arguments and briefs, the court after due consideration thereof, doth order, adjudge, and decree that: (1) Each and all of plaintiffs' exceptions to the findings of fact, conclusions of law, and decree nisi be and are hereby dismissed; (2) the bill of complaint be and is hereby dismissed; and (3) costs of these proceedings are to be paid by plaintiffs, Gertrude P. Hallowell and Frank O'Brien.

And, now, April 1, 1936, inasmuch as the above decree is not approved by my colleagues, see opinions filed concurrently by Fronefield and Broomall, JJ., the same is therefore filed as a dissenting opinion.