## Emergency Care Unit v. Second Alarmers Association

*Michael M. Goss,* for plaintiff.
*Mitchell Kramer* and *Hubert D. Yollin,* for defendants.

MOSS, *J.*, March 20, 1979—This matter is before the court on the preliminary objections of all defendants in the nature of a demurrer to plaintiff's complaint in equity.

The well-pleaded averments of the complaint may be summarized as follows.

For some time there has been rivalry between plaintiff, Emergency Care Unit, and defendant, Second Alarmers Association & Rescue Squad of Montgomery County, to provide ambulance service in Abington Township.

The commissioners of the township, in approximately January, 1978, appointed defendant, Second Alarmers, to serve the northern part of the township and plaintiff to serve the southern part. As a result of some dissatisfaction, an advisory committee was appointed and made recommendations to the commissioners.

The commissioners decided that effective September 1, 1978, the two organizations would provide the service in particular nonoverlapping sections of the township.

The commissioners on August 10, 1978, directed the advisory committee to complete its study of the two units while performing the trial run.

The advisory committee recommended the establishment of a township-operated system, but as an alternative recommended contracting with Emergency Care Unit, Inc. for the emergency medical care in the whole township.

The commissioners requested both Emergency Care Unit and Second Alarmers to submit a proposed written contract by December 15, 1978.

Emergency Care Unit did submit a detailed proposed contract by December 15, 1978.

Then, on December 26, 1978, the township provided a proposed form of contract to plaintiff and to defendant, Second Alarmers Association, and plaintiff and defendant, Second Alarmers Association were notified to present sealed bids at the commissioners' meeting of December 28, 1978.

Plaintiff submitted a sealed bid of $25,000 on December 28, 1978. However, the township on De-

cember 28, 1978, submitted a new proposed form of contract with different requirements and specifications, in such time that plaintiff was unable at that time to submit a bid on the revised requirements and specifications.

At the meeting of December 28, 1978, plaintiff's sealed bid (on the township's form of December 26, 1978) was opened and read on the record. Defendant, Second Alarmers, had not submitted a written bid but, after the plaintiff's bid was read, Second Alarmers orally bid $18,000 and at that meeting, the commissioners voted to accept the oral bid and to award the contract to Second Alarmers.

Contracts made by township commissioners which, by statute, do not require advertising or bidding include "(5) Those involving personal or professional services." The First Class Township Code of June 24, 1931, P.L. 1206, sec. 1802, as amended, 53 P.S. §56802(d). The scope of "personal or professional services" is broad enough to include legal, medical, engineering, architectural, artistic and insurance services, and others: London & Lancashire Indemnity Co. v. Upper Darby Township, 28 Del. Co. 223 (1937). We decide that it is broad enough to include ambulance service. It appears that plaintiff and the Abington Township Commissioners' Advisory Committee are of the opinion that the caliber of care furnished by plaintiff would be better than that furnished by the Second Alarmers Association. However, that is a matter within the discretion of the township commissioners with which we will not interfere.

Plaintiff contends that even if the township has no statutory duty to invite bidding, once it established such a procedure, it was bound to follow it. Of course, a municipal employe may not set at naught

the plain mandates of an ordinance: Flinn v. Philadelphia, 258 Pa. 355, 102 Atl. 24 (1917). "It is clearly established in Pennsylvania that if a statute or ordinance provides that a specific method or formal mode be followed in submitting a bid for a municipal contract that such provisions are mandatory and must be observed: Harris v. Philadelphia, 283 Pa. 496, 129 A. 460 (1925)." Whitemarsh Twp. Auth. v. Finelli Bros., 408 Pa. 373, 377, 184 A. 2d 512 (1962). On the other hand, in the instant case there is no statute or ordinance providing for submission of a sealed bid or even of a written bid.

"'The presumption is that acts of executive officers are done for the public good. When their actions are challenged, the burden of showing to the contrary rests on those asserting it, and it is a heavy burden. Courts can and will interfere only when it is made apparent that discretion has been abused.'" Johnson v. Horsham Twp., 80 Montg. 308, 310 (1962).

Plaintiff argues that the votes of several of the township commissioners may have been affected by the fact that members of their families are employed by the Second Alarmers. "It is a well and wisely established principle of public policy in Pennsylvania that a public official may not use his official power to further his own interests. This principle originated in the common law and has become embodied in the Constitution of Pennsylvania [Act III, section 13] and has been declared to be the policy of this state in many Acts of Assembly: [citing cases and authorities]. The reasons for this must be obvious—a man cannot serve two masters at the same time, and the public interest must not be jeopardized by the acts of a public official who has a direct pecuniary or personal or private inter-

est which is or may be in conflict with the public interest." Genkinger v. New Castle, 368 Pa. 547, 551-552, 84 A. 2d 303 (1951); Eways v. Reading Parking Authority, 385 Pa. 592, 602-603, 124 A. 2d 92 (1956).

The First Class Township Code, sec. 1811, 53 P.S. §56811, prescribes the statutory rule for determination of whether a township official has a conflict of interest. It provides in pertinent part:

". . . no township official . . . shall be interested to any appreciable degree, either directly or indirectly, in any contract for the sale or furnishing of any supplies or materials for the use of the township or for any work to be done for such township involving the expenditure by the township of more than three hundred dollars in any year, but this limitation shall not apply to cases where such officer . . . of the township is an employee of the person, firm or corporation to which the money is to be paid in a capacity with no possible influence on the transaction and in which he cannot be possibly benefited thereby, either financially or otherwise. But in the case of a commissioner, if he knows that he is within the exception just mentioned, he shall so inform the commissioners and shall refrain from voting on the expenditure or any ordinance relating thereto and shall in no manner participate therein."

Accepting the broadly stated rule that: "A public officer may not use his official power to further his own interests," 30 P.L.E. 156, §76, we find nothing in the pertinent legislation or decisional authority which would disqualify a township commissioner to vote on a contract for services to be rendered by a corporation simply because a member of a township commissioner's family is employed by the cor-

poration in a nonadministrative or nonexecutive capacity. It would appear to be highly unethical for a commissioner to vote in favor of one proposed contracting party and against another simply on the unstated ground that one or more of his family or friends would lose their jobs if he were to vote otherwise. However, we shall not engage in such speculation particularly since the plaintiff has *not alleged* (although it argued) that some members of the family of one or more township commissioners are employed by the Second Alarmers and hence the votes of such commissioners were tainted with illegality.

Plaintiff strenuously disagrees with the judgment of the Abington Township Commissioners. Plaintiff evidently considers the service that it would render to be far superior to that of the Second Alarmers. In fact, there may be an insinuation that lives are unnecessarily endangered if the township continues to designate the Second Alarmers to perform the ambulance service. This is a matter of opinion, just as is the best man to elect to the office of township secretary, township engineer or township solicitor. The proper place to resolve disagreement about such opinion is the political arena wherein township commissioners are elected for a period of four years.

Plaintiff has neither stated a cause of action, nor has it proposed any amendment which would state a cause of action. In such case, leave to file an amended complaint should not be granted: Lerman v. Rudolph, 413 Pa. 555, 198 A. 2d 582 (1964). In a case such as this where the facts averred show with certainty that the law will not permit a decree in favor of plaintiff, summary judgment is proper: Sullivan v. Philadelphia, 378 Pa. 648, 107 A. 2d 854 (1954).

And now, March 20, 1979, the preliminary objections to the nature of a demurrer to the complaint are sustained. The prothonotary upon payment of his proper fee is directed to mark the complaint "dismissed" and to enter judgment in favor of the defendants.