## Kline v. Hampton Township

*Lloyd F. Engel, Jr.,* for plaintiff.
*George Ross,* for defendant.

BROWN, J., January 5, 1967.—This case arises out of the promotion and demotion of a police officer of Hampton Township, a township of the second class situated in the County of Allegheny, Pa., and his subsequent petition for appeal under the Police Tenure

Act of June 15, 1951, P. L. 586, as amended, 53 PS §812.

Petitioner here, Officer Chester J. Kline, had served on the Hampton Township Police Force for approximately five years prior to the beginning of January, 1965, in the capacity of patrolman. Starting about the first day of January, 1965, Officer Kline assumed the duties of a lieutenant on the force. On March 1, 1965, the Board of Supervisors of Hampton Township moved to appoint Officer Kline a lieutenant at the executive meeting of March 1, and made that appointment retroactive to January 1, granting back pay to that date. The minutes of the executive meeting of March 1 contained the following notations under item 14: "Appointment of Lt. Hamilton moved, Mair seconded, ET no, F.H. yes, C.K. yes". This notation refers to the action of the executive board in appointing Officer Kline to lieutenant. The motion was made by Hamilton, seconded by Supervisor Mair, and the vote was, E. W. Tappe, "no"; C. M. Knox, "yes", and Francis Hamilton, "yes". From the testimony, it is clear that it was the practice and the custom of the township board of supervisors to discuss and conduct much business at the executive meetings which were held on the first Tuesday of each month. The minutes of the executive meetings were read at the public meetings, and, according to the testimony, actions taken at the meetings were generally assumed to be approved upon the reading of the minutes at the public meeting. This court realizes that it is the law that the mere reading of the executive meeting minutes at a public meeting, without more, does not constitute a ratification or adoption of the actions taken at the executive meeting. However, in this case there was more. At the public meeting of March 16, 1965, the promotion of Lieutenant Kline was vigorously discussed and the position of the members of the board was clearly stated, and

the testimony reveals that their actions on this matter did constitute an adoption or ratification of their prior action, as we will discuss later. The original minutes of the public meeting of March 16, 1965, have been lost. Officer Kline has been deprived of these notes, which might have been very helpful to his case, through no fault of his own. The court has noted the unbusinesslike manner in which the shorthand notes were transcribed; the fact that the original meeting notes were lost; and the fact that the township supervisor condensed the notes before they were read at the subsequent meeting.

Officer Kline served as lieutenant until March 21, 1966. He was then notified by the township manager and the police chief that effective March 22, he was no longer to continue as a lieutenant, but was to resume the duties of patrolman. He then made a demand for written charges and subsequently, by his attorney, made another demand for charges and for a hearing—all of which were ignored. Kline now appeals under the Police Tenure Act of 1961, supra.

The township strongly relies on Templeton Appeal, 399 Pa. 10 (1960), for the proposition that a void appointment confers upon the appointed officer no status in the appointive position. Templeton is inapposite, for there the borough attempted to appoint a chief of police, although it had never created a police force as required by the borough code.

If Officer Kline's appointment is void, then he is entitled to no protection under the Police Tenure Act of 1951, as amended, supra, which is as follows:

"Section 2. Removals.—No person employed as a regular full time police officer in any police department of any township of the second class . . . with the exception of policemen appointed for a probationary period of one year or less, shall be suspended, removed or reduced in rank except for the following

reasons: (1) physical or mental disability affecting his ability to continue in service, in which case the person shall receive an honorable discharge from service; (2) neglect or violation of any official duty; (3) violating of any law which provides that such violation constitutes a misdemeanor or felony; (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; (5) intoxication while on duty. A person so employed shall not be removed for religious, racial or political reasons. A written statement of any charges made against any person so employed shall be furnished to such person within five days after the same are filed".

However, this court must first determine whether Officer Kline's appointment was in fact void, as claimed by the township.

In order to make this determination, we must first determine: (a) whether the promotion of a police officer in a second class township need be done at a public meeting; and if so, (b) whether there was action by the township board of supervisors promoting Officer Kline at a public meeting.

The township solicitor, in his brief, at page 2 states:

"It is the contention of the Township that an executive session is not a duly constituted or legal meeting of the Board of Supervisors and as a result no business can be transacted relating to Township affairs".

This is not an accurate statement of the law in Pennsylvania. The township has cited no authority for the proposition; nor has the court been able to discover any. It is true that the Act of June 21, 1957, P. L. 392, sec. 1(B), 65 PS §251 et seq., requires, as we shall discuss subsequently, that the promotion of a police officer be done at a public meeting. This section does not state, however, that an executive session is not a duly constituted or legal meeting; nor does it state that no township business may be conducted at

such a meeting. The Act of 1957, supra, provides, inter alia, as follows:

"(B) Public Meeting. That part of any meeting of a board during which it votes upon any ordinance, resolution, motion or other official action proposed by or to the board dealing with the receipt, borrowing or disbursement of funds or the acquisition, use or disposal of services or of any supplies, materials, equipment or other property or the fixing of personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term 'Public Meeting' shall not mean any meeting, the publication of the facts concerning which would disclose the institution, progress or result of an investigation undertaken by a board in the performance of its official duties".

This statute is applicable to any meeting which deals with the "disposal of services". The action of a township board of supervisors in promoting a police officer is an action which disposes of services, to wit, the services of the police officer. Likewise, it should be noted that the statute applies to actions of a board resulting in the "disbursement of funds". Here again, there is no question that the promotion of a police officer will require the disbursement of additional funds in the form of a monthly increase in wages paid to the officer. This clearly appears from the testimony, and neither party contends otherwise.

Lastly, the statute applies to board actions which fix "personal or property rights, privileges, immunities, duties or obligations of any person. . . ." It is once again clear that a township board of supervisors in promoting a police officer is fixing the "personal and property rights, privileges, immunities, duties or obligations" of the policeman being promoted.

From the above, it can be seen that the promotion of Officer Kline to the rank of lieutenant was the type

of board action which fell within the purview of the act.

We then turn to the question of whether or not there was an action by the board of supervisors promoting Officer Kline at any public meeting. Municipal officers are presumed to have properly performed their duties and to have taken the steps necessary to give validity to their official acts: Miners Savings Bank of Pittston v. Duryea Borough, 331 Pa. 458 (1938).

It is the general rule that the governing body of a municipal corporation usually acts by vote. But, in the absence of express provision to the contrary, the vote may be given in any form which clearly expresses the will of the members. In 4 McQuillin, Municipal Corporations §13.43, it is said:

"[The vote] may be by ballot, by resolution, by the adoption of a verbal motion, or in any other manner".

See also 62 C. J. S. §391.

As authority for the last point quoted, McQuillin cites Commonwealth ex rel. Fox v. Chace, 403 Pa. 117 (1961). In Chace, a member of the Brookhaven Borough Council resigned and, at the same meeting, Chace was nominated for the vacancy and the nomination was seconded. Then, a person named Skulski was nominated, but there was no second. A motion to close the nominations was made and seconded, and the secretary was instructed to enter the appointment of Chace. The appointment was attacked by action of quo warranto and was declared invalid by the lower court. The Supreme Court reversed, held the appointment valid, and stated:

"Nor is the appointment invalid because a formal resolution was not enacted. *It is the substance of the act of a governing body that is all important, not the form thereof.* In substance, a resolution is merely the formal expression of the will of the majority of an official body: Scudder v. Smith, 331 Pa. 165, 200 A. 2d

601 (1938). The substance of the procedure followed herein was manifestly expressive of the will of the majority. *The fact that the appointment was not in the form of a resolution does not invalidate its significance"*. (Italics supplied.)

See also 11 Dillon, Municipal Corporations (5th ed.) §571, 895.

The meeting of March 16, 1965, was a legally called public meeting. A brief review of the testimony reveals that the board of supervisors, at that meeting, after a lengthy and vigorous discussion, did act in a manner sufficient to validly and legally promote Officer Kline to the rank of lieutenant. From that testimony, it is apparent that the position of the board of supervisors was clearly put, and that the procedure followed and the action taken were "manifestly expressive of the will of the majority".[1] It is true there was no formal motion or resolution, but this is not always necessary, as we have explained above.

---

[1] The action of the board of supervisors emphatically appears from the testimony of Squire Mair, on direct examination, as follows:

"Mr. Engle:

"Q. Was there any discussion or action whatsoever relating to this promotion of Chester Kline at that meeting of March 16, 1965?

"A. We had a fairly good attendance at that meeting, as I recall, and there was a great deal of discussion by some of the citizens of the Township who felt that this promotion of the lieutenant should have been handled in a different form, and several of—one policeman with his wife, his father and his mother, and there was a very lengthy discussion with regard to the promotion of the patrolman to lieutenant. At the end of that meeting we didn't confirm it in motion, but we confirmed it by our consent in allowing that promotion to stand.

"Q. This contention that you say was raised by the citizens, who were present at that meeting, was that in any way pointed to the fact that there was anything illegal about the promotion of Chester Kline to lieutenant?

"A. No, it was not".

We hold that there was action by the board of supervisors at a public meeting which in substance met the requirements of the Act of 1957, supra, and that Officer Kline is, therefore, legally entitled to the rank of lieutenant and to be reimbursed for pay lost during the period of the illegal suspension from that office.

In reaching this conclusion, we have applied the common sense doctrine that this court should not utilize tightly drawn technicalities to defeat what is substantial compliance with the law, and in support of this, we quote again Chace, supra, as follows, page 119:

"Under the Borough Code, supra, the borough council has the right to fill an existing vacancy within thirty days after the vacancy occurs. This right should not be defeated through the application of tightly drawn technicalities in the courts".

There is yet another ground upon which this decision may be based. It is the equally strong ground of ratification.

Counsel for the township argues vigorously that ratification may not be applied to the instant case. This argument against ratification is not persuasive. It is the settled law that actions or contracts which are within the scope of the corporate powers, but not authorized by proper action of the municipal corporation, may be ratified by the proper corporate authority. It is only when an act or a contract is *beyond the scope* of the corporate powers, that is to say, ultra vires the municipal corporation, that it may not be ratified: 10 McQuillin, Municipal Corporations §29.104; The Aspinwall-Delafield Company v. The Borough of Aspinwall, 229 Pa. 1 (1910); McKnight v. City of Pittsburgh, 91 Pa. 273 (1879). See also 25 P. L. Encyc., Municipal Corporations, §240; 63 C. J. S. §1009, and cases cited therein.

In order to apply this principle of ratification to the case at bar, we must find: (a) that in the original

action, the board of supervisors, in attempting to promote Officer Kline, was committing an unauthorized act; (b) that the act was within the scope of the corporate power, i.e., not ultra vires; and (c) that there was, in fact, a ratification of that previously unauthorized act by the board of supervisors, i.e., an intendment on the part of the board to adopt or ratify the promotion as their own act. With regard to the first of these requisites, we have already discussed the Act of 1957, which requires certain acts of a board of supervisors to be done at a public meeting. Since Officer Kline's promotion was initially attempted at an executive meeting, and not at a public meeting in compliance with the Act of 1957, said promotion was an unauthorized or defective exercise of the corporate power. Thus, the first of these three requirements is met; the initial action was unauthorized and defective.

We turn then to the question of whether such a promotion is within the scope of the corporate power, and, therefore, a proper act to be the subject of a ratification.

A municipal corporation is a creature of the State, and possesses only such powers as have been expressly or impliedly granted to it by the State: School District of Philadelphia v. Zoning Board of Adjustment, 417 Pa. 277 (1965). The powers of a municipality or its officers are prescribed by charter or statute (Appeal of Whelen, 108 Pa. 162 (1884)), and are to be found in the statute conferring the authority to the municipal body: Miners Savings Bank of Pittston v. Duryea Borough, supra.

We now look to The Second Class Township Code and related laws in order to discover the scope of municipal power on police matters such as the one here involved. There are three sections of the code which delineate the power of a second class township to pro-

58

mote police officers. The Act of May 1, 1933, P. L. 103, sec. 590, as amended July 2, 1953, P. L. 354, sec. 5, 53 PS §65590, provides the board of supervisors of a second class township with broad powers to appoint township police, establish rates of compensation for said police and discharge such police at will. This statute is the basic source of the township's power to deal with its police department.

The other two acts tend to restrict the power of the township to deal with the police department. The Police Tenure Act of 1951, supra, provides, as far as is applicable to this case, that a police officer who has served for one year may not be demoted except for cause. Thus, this section limits the power of a board of supervisors to discharge, suspend or demote police officers, but in no way limits the power of the township to *promote* a police officer. Therefore, considering these two acts together, we see that it is within the scope of the power of the township to promote police officers.

The Act of 1957 prescribes the method by which a police officer may be promoted, and thereby also applies to the handling of police matters. This act does not take away any power of the township to promote officers, but rather, simply requires that such power be exercised in a certain way. It requires that the township exercise its power to promote a policeman only at a public meeting. But the fact that the board of supervisors attempts to exercise this power at a special meeting, does not make its act ultra vires, i.e., outside the scope of the power of a municipality. On the contrary, the power exists in the board of supervisors to promote a police officer, and the fact that it was done at a non-public meeting does not cause the power itself to cease to exist. Rather, such an attempted promotion at a non-public meeting is simply non-effectual, the end result of which is clearly stated

in Aspinwall-Delafield Company, supra, at page 5:[2]

"The contention on the part of the borough assumes that the contract was void. This is a mistake. A void contract is one which offends against public law or policy, or is without the scope of proper authority. Nothing of the kind can be affirmed with respect to this contract; it was amply within the scope of corporate authority, for the power to provide a sewer for the borough is a legitimate municipal function; the manner of providing it, whether by construction or purchase, is simply a matter of discretion. The defect in the resolution which authorized this contract was its want of regularity. Had it been approved by the burgess, its entire sufficiency could not have been questioned. It follows that the contract made thereunder was not void, but simply voidable and susceptible of ratification".

This is the very point at which counsel for the township becomes confused. He argues that an act which is ultra vires may not be ratified, and this is, of course, a true statement of the law. He then argues that the promotion of Officer Kline, because it was not done at

---

[2] Aspinwall Borough let a contract executed by the proper borough authorities under a resolution unanimously adopted at a regular meeting of council requiring payment into the borough treasury of a certain minimum charge for lot owners to connect into a sewer line. Said contract lacked the approval of the burgess, as was required by law. Subsequent to the execution, the board attempted to disaffirm the contract on the ground of want of the signature of the burgess. In addition to the above quote, the court also said, at page 6: " 'Of course, an executory contract, made without authority, cannot be enforced, but a different question arises when the contract has been executed and the corporation has received the benefit of it. In such a case the law interposes an estoppel and will not permit the validity of the contract to be called in question.' And this is the rule that the learned chancellor applied in this case. He might have gone further and derived from the evidence a *ratification* of the contract by the borough. In this, he would have been fully supported by the authorities". (Italics supplied.)

a public meeting, was ultra vires. He is in error. That an act was not done according to required procedure does not make it ultra vires. Rather, one must look to the township code (Appeal of Whelen, supra), to determine whether this act was ultra vires. We have done so, and we hold that it is not, and that, as a result, promotion of a police officer is the type of action which may be ratified by the board of supervisors.

Counsel for the township has cited Smith v. City of Philadelphia, 227 Pa. 423 (1910), for the proposition that the illegal act of a municipal body cannot be ratified at any subsequent time. This is the law in Pennsylvania, but it is not the controlling principle of law in this case.

In Smith, supra, the City of Philadelphia and one Vare contracted for the grading and surfacing of a street in that city. The contract contained a provision limiting total contract payment of $500,000. When that total had been paid to Vare, the work had not been completed. In order to complete the work, a supplemental agreement was executed whereby Vare was to receive an additional $150,000 for completion of the work. This agreement was executed without any advertisement as required by statute. The city council then enacted an ordinance authorizing the mayor to enter into such an agreement without meeting the advertisement requirements, and it was argued that the ordinance had ratified the prior illegal supplemental agreement for $150,000. The court rejected this argument, however, holding that the advertising requirements were mandatory and must, therefore, be complied with by the body which has attempted the act of ratification. In essence, the court said that a ratification may take place only when the act or acts of ratification themselves comply with all statutory requirements. In Smith, the attempted act of ratification was the ordinance which allegedly authorized a supplemen-

tal contract without advertisement. Thus, the act of ratification itself was in violation of the statute requiring such advertising, and to find a ratification under such circumstances would be to bypass the statutory requirement of advertisement. In plain words, the council attempted to pass an ordinance which said that the council did not have to comply with the mandatory provisions of the State law. But the instant case is in no way similar to Smith, supra. Here, the act of ratification is not in violation of any statutory provision. The township has broad power to promote policemen, providing such a promotion is done at a public meeting. Likewise, the township has the power to ratify a promotion like the one here at issue, providing such ratification is done at a public meeting.

The last question, therefore, is whether or not there were any actions by the board of supervisors sufficient to constitute a ratification. We have already discussed the public meeting of March 16, 1965. At that meeting, the supervisors indicated their position on the promotion; indicated that a majority had favored the promotion; and indicated, by their words and actions, that they intended to let the promotion stand. The board's action was sufficiently expressive of the will of the majority to constitute a promotion at that public meeting, thus satisfying the requirements of the Act of 1957.

Ratification may be effected by conduct from which ratification may be implied: 25 P. L. Encyc. §240; City of Pittsburgh v. Biggart, 85 Pa. 425 (1877). Indeed, ratification may be by some affirmative action by the proper officials or some negative attitude which of itself would amount to an approval of the matter in question. Ratification may consist of mere silence, acquiescence or the acceptance of benefits, among others. Here, the court again refers to the testimony of Supervisor Mair, at page 50 of the testimony, as

cited above: 10 McQuillin, Municipal Corporations §29.106; Hall v. Borough of Dormont, 99 Pa. Superior Ct. 296 (1930). See also 63 C. J. S. §1009(b)(2), and cases cited therein.

There is no question that the intent of the board of supervisors at the public meeting was to let the promotion of Officer Kline stand. During the vigorous discussions above referred to, the supervisors stated their position, and how they had voted at the executive meeting. Perhaps the best evidence of their intention to let the promotion stand is the fact that the board permitted Officer Kline to continue to serve as a lieutenant for more than a year after the March 16th meeting. Clearly, they considered Kline a lieutenant and intended for him to remain a lieutenant.

We feel this case falls under the general statement of law concerning ratification, as set forth in Tooke, Quasi-Contractual Liability of Municipal Corporations, 47 Harv. L. Rev. 1143, 1165 (1934):

"The term 'ratification' as used in this class of cases applies both to the unwarranted acts of subordinate agents and to *the defective exercise of power by a local governing body.* Ratification of an unwarranted exercise of authority by an agent of a municipal body requires, if strictly applied, that the officers vested with the power approve the action of the subordinate, but this may be either express, formal approval, or implied from the acts, words, or conduct of the body empowered to act, which reasonably show that intention. Such an implied ratification must be determined from all the facts and circumstances attributable to the principal, but there is a strong equity in favor of an implication of ratification *wherever work or material have been furnished in good faith to carry out a municipal function.* . . . But the majority of our courts hold that a failure to comply with mandatory requirements cannot be cured by ratification *unless action is taken by*

*the body to which the power to contract is committed, and in the manner prescribed by statute*". (Italics supplied.)

The implication of ratification wherever work or material have been furnished in good faith to carry out a municipal function is a recognized legal concept in our law. In Miners Savings Bank of Pittston v. Duryea Borough, supra, plaintiff bank loaned to defendant borough, on a note, the sum of $30,000, payable 6 months from date, which money was to be used for current expenses of the borough. The act of assembly provided that no ordinance or resolution should be considered in force until the same was recorded in the ordinance book of the borough. In the lower court, defendant borough objected to the validity of the note on the ground that the resolution had not been recorded. There was an entry, though, in the ordinance book of a motion which was carried to borrow the money from plaintiff's bank. Upon reversing the lower court, the Supreme Court said, at page 464:

"To permit the defendant borough to avoid liability upon the ground that statutory formalities have not been followed, after securing a loan upon the representation in writing under the borough seal that all the requirements of the statute were fulfilled, would be to encourage deceit and dishonesty in municipal dealings. Such statutory requirements are not intended to be applied in this manner".

We may well adopt the reasoning in that case and apply the same to the facts now before us, since the township officials did, at an executive session and a public meeting, consider the matter of the promotion of Lieutenant Kline, paid him for his services as a lieutenant for over a year, for which obviously the township received the benefit of his services, and then lost the stenographic notes of the meeting at which they contend no action was taken.

64

Officer Kline is, therefore, entitled to protection under the Police Tenure Act, and must, therefore, be reinstated with full lieutenant's pay for the period of his suspension.

ORDER OF COURT

And now, January 5, 1967, after hearing, submission of briefs and careful consideration thereof, in accord with the foregoing opinion, it is ordered that Chester J. Kline, petitioner herein, be reinstated as police lieutenant by the Board of Supervisors of the Township of Hampton, and to be paid full lieutenant's pay for the period of his suspension as police lieutenant. Since petitioner has been serving as patrolman since his reduction in rank, the back salary shall be the difference he would have received as a lieutenant and the amount he has received as a patrolman.